My name is Deborah Bookout and I represent Petitioner Appellant Carl Sullivan. I'd like to reserve two minutes for rebuttal, please. The issue in this appeal is whether Sullivan is entitled to equitable tolling during the time his state petition was pending. Mr. Sullivan contends that because he diligently pursued his case and his federal petition would have been timely filed, but for the Pace decision overruling Dictato, he is entitled to equitable tolling during the time his untimely state petition was pending. That period was from May 10th, 2001 to March 30th, 2004. May I ask you a question? I think the issue is just ever so slightly different. And that is whether under our existing law on the subject, the record in this case admits of equitable tolling. Specifically what I'm looking to hear from you on is in Harris and in Townsend both, we hinged our equitable tolling analysis on what Harris called the critical fact of reliance on Dictato. I don't frankly know what they meant by that, but that's what they called the critical fact. And here the record, and I'm not talking either about extrinsic evidence, but the record here is kind of there on the subject of your reliance. And indeed, up until our court got the idea and remanded, you, your client, took the position that equitable tolling only went through, I think it's December of 2001. So bottom line question, how do we deal with our case law on reliance? At first I think I would agree with the Court that it's not entirely clear what Harris means when it talks about reliance on Dictato, what exactly Harris had to present to the Court in establishing reliance on Dictato. I think that what I argued in the pleadings below and am arguing now is given what Townsend says and some other unpublished opinions, what that seems to mean, what they seem to mean in Harris was that under the particular facts that you saw with Harris and Townsend was a petitioner who first and foremost was diligent in pursuing his rights. I think that has to be the starting point. And whose petition was pending before Pace was decided. Post-Dictato and pre-Pace, a petitioner who was diligent in pursuing his rights and found himself in that particular position would be entitled to equitable tolling during the time his State petition was pending. That's how I have to read Harris based on what came after. It isn't entirely clear what the Court meant by reliance. And that would be without regard to whether the petitioner was aware of Harris or thought about Harris, was considering Harris in connection with this filing? I would say that would be my reading of the cases in a pro se petitioner's perspective. I don't know how a pro se petitioner would have to notify the Court of reliance in every single case. There are a handful of cases that suggest, from this Court, that the petitioner doesn't need to make a particular showing or some kind of a demonstration that his delay was in part based on his understanding of the law. And then others that merely assume that that must be the reason for a late or otherwise late filing. Suggesting that one possibility would be a bright line rule that anybody that falls within the particular category that your client falls into. So his petition was pending at the time of the Pace decision, but post dictata would automatically be entitled to equitable tolling. Is that the argument that you would make? Well, yes and no. I think that if those factors in terms of timing were met, then that would be the first step, I guess. Well, actually, the second step, because I think that what is still important and what makes it not necessarily a bright line rule is that the petitioner was diligent. If Mr. Sullivan had done nothing, had just been fiddling around in State court, but just so happened to file his petition post dictata and pre-Pace, I'm not so sure he would be entitled to equitable tolling. But that's not the circumstances we have here. We have a petitioner who was diligent and who had plenty of time remaining on his Federal clock before he filed his Federal petition. In fact, when he filed his Federal petition, it wasn't until 30 days later that Pace was decided. So at that particular time, had there been a motion to dismiss his petition as being untimely, it would have failed because dictato held that that petition would have been timely or would have been properly filed, excuse me. So he would have been entitled to statutory tolling. Thirty days later, then Pace was decided it overruled dictato and rendered Sullivan's petition time bar. The time bar didn't occur as a result of any negligence or mistake or miscalculation on Sullivan's part. It occurred only because of the Pace decision overruling dictato. Do we have a finding on diligence? We have a couple of findings on diligence in Mr. Sullivan's case that are somewhat confusing. In the first go-around, the district court did find that Sullivan diligently pursued his case. In the second go-around after the remand, it isn't entirely clear what the court found. I would argue that the original finding was the correct one. There were many circumstances in Sullivan's case with regard to the amended judgment and when that occurred and the fact that Sullivan litigated his petition believing that he was timely. And if the court considered those things in finding diligence pre-remand of the first Sullivan decision. The second go-around, there's an error in his dates, and so I'm not quite sure how to address that question. I have another unanswerable question. Okay. Why would we have remanded if it weren't, it contemplated that there would be some kind of finding on reliance or something that we didn't already know? Because we now know the same thing that we knew then. So why shouldn't, why isn't it sort of implicit in our remand before that we wanted some kind of fact finding that hadn't yet occurred? I wish I could answer that question. And I don't know. So do I. And I don't know. The only thing, I can surmise that the court just wanted to give the district court an opportunity to hear Sullivan's argument with, you know, Harris versus Carter, but also that the COA in Sullivan was expanded to include that issue that the district court found wasn't presented below. So, you know, perhaps the court was just, you know, allowing the district court to do what it couldn't do. I don't know. And the other reason I don't know is because the cases that I represented subsequent to Sullivan were in the exact same posture as Sullivan, and those cases were not remanded for the finding of equitable tolling. So I wish, I don't know the answer to the question. And in some of those cases, I think you told us in your brief, there was no more significant showing of reliance than Mr. Sullivan has made here. No. And also it would argue that in Townsend there was no significant showing or any showing of reliance on Dictato. But there was an argument at least. There was an argument in Townsend which we referenced. And it's hard to know when that argument occurred. Was it in the briefings in the Ninth Circuit or did it occur below? I would argue that it couldn't necessarily have been presented below because the issue of timeliness wasn't raised in the district court as the court noted in Townsend. I see that I have just a minute and 45 seconds, so if there's no other questions, I'll save it for rebuttal. All right. Thank you. May it please the Court and counsel, my name is Robert Wieland. I'm a senior deputy attorney general employed by the Office of the Attorney General of the State of Nevada. I have the privilege of representing the respondents in this particular case. As has been alluded to, this matter was remanded back to the federal district court following previous matter before this court. And this court remanded the matter back so the court could consider equitable tolling in light of this court's decision in Harris. Quite frankly, we expected, as Judge Rimer alluded to just very recently, some sort of showing on part of Mr. Sullivan that there was some sort of reliance on the dictato decision. And there has been absolutely no showing. The federal district court noted that in its order in its determination that Mr. Sullivan was not entitled to equitable tolling. The Harris case arose out of the Riddle v. Kemne case, and Riddle shows that the entitlement, if there is any such thing as entitlement to equitable tolling, is highly dependent upon the facts and the factual showing made by the petitioner in the particular case. Here there hasn't been anything. There has been nothing other than a naked claim that I'm entitled to dictato and, therefore, everything's hunky-dory. Yet Harris itself says that there is no such thing as an automatic entitlement. None of the cases propounded by this court or expounded by this ‑‑ excuse me, decided by this court, say that just because dictato was decided and it was reversed on the basis of pace, that there's an automatic entitlement to equitable tolling. With the language of Harris, which is what was cited on the remand, I note that we say that the critical fact here is that Harris relied in good faith on then binding circuit precedent and so on, and then it says Harris was undoubtedly aware of when EDPA's statute limitations would expire under our rule in dictato. Harris presumably chose his tactical strategy precisely because he believed that under dictato. So that doesn't sound like a factual determination. That sounds like judges presuming what counsel reasonably would have done. I don't take from that language the mandate that there's an evidentiary fact-finding that has to be engaged in. This was a ‑‑ he was ‑‑ was Mr. Sullivan pro se when all of this was going on? Mr. Sullivan had counsel appointed for him when counsel filed the supplemental brief. Oh, I mean on remand. No, you're saying on remand. On remand from this court. On remand from this court. He's been represented by counsel. No, I'm sorry. Let me ‑‑ when he would have been relying in that time frame, was he represented by counsel? Yes, I believe he was. He had counsel who filed the supplemental petition in ‑‑ the supplemental petition, I believe, was filed in 2002. But if we might examine that language in Harris, it talks about the critical fact, and it talks about his undoubted awareness, okay? I tend to take this court literally when it says there's a critical fact in the determination, and the critical fact is the, in fact, the actual reliance on dictato. There isn't anything here that would suggest that at all, nor do the circumstances in this case suggest that at all, because as Judge Reimer pointed out, and as apparent from the record, the first time any claim of reliance on dictato showed up was in the opening brief, the last time this matter was in front of this court. And as pointed out in this brief, you can't consider a claim of equitable tolling for the first time on appeal. That was an entirely different claim for equitable tolling that was then what was presented in the Federal District Court. Nevertheless, this court decided to remand the matter for additional consideration in light of Harris. There still hasn't been any showing other than a claim, well, dictato was decided, and we're automatically entitled to it. And I don't think Harris stands for anything even approaching automatic entitlement. If it did, it wouldn't have had to say anything other than dictato was decided on this date, pace was decided on this date, therefore, everybody, and that means everybody, is entitled to rely on that. There isn't any case out of the circuit that says that. Yeah, okay. I take your point. I'm not sure how much one, I mean, literal language in our opinions is, you know, and not always the literal language may be ambiguous. So I go to Townsend, and what it says is Townsend asserts that he relied on controlling Ninth Circuit precedent. So it sounds as all he needed to do was say, I relied on dictato, okay, or I relied on, if I'm looking for guidance as counsel based on our opinions, even in our remand, we didn't say we remanded for the district court to conduct an evidentiary hearing on whether or not there was actual reliance. So I'm, you know, the fact that there is an absence of proof, which is what this is coming down to, a fact-finding mission, you're relying on critical fact language, and I'm relying on other language in the opinion. So it leaves it somewhat murky. Well, okay. All right. Now, if somebody is entitled to equitable tolling, they have to meet certain burdens. And this Court has said the burden of proof and persuasion is upon the Petitioner. And in this case, what you have is counsel making an assertion that somebody relied on dictato. We don't have anything showing that Mr. Sullivan relied on it, that he was even aware of it or anything. And he's a pro se prisoner at that point, right? Well, wait a minute. If you want to make the assumption that everybody knows law, then you have to go back to Artoos v. Bennett. Artoos v. Bennett reserved the precise question that Pace decided. Okay? Now, the United States Supreme Court specifically reserved the question to footnote, said we aren't deciding whether or not a timely filed petition under state law is a properly filed petition. All right? Therefore, at that point in time, there are at least two prongs. Either we will say it is or we will say that it isn't. Okay? At that particular point in time, and I cited a case, I can't remember the name right now. Petitioners are on notice. Maybe it will go this way. Maybe it will go that way. We don't know. It depends on what the United States Supreme Court decides. Now, the Ninth Circuit came out with dictato, saying, on the one hand, well, we think that they are properly filed, and therefore, there is no tolling. But the more conservative view is the opposite one, saying, no, it is not properly filed. And as Pace itself says, a petitioner could have filed a protective petition. It's right there in Pace. What prevented Mr. Sullivan from filing a protective petition, particularly in the circumstance when he knows that the Nevada Supreme, as of, I believe it's December, let's see. I forget which date. By March 5, 2004, he knows that the Nevada Supreme Court has decided that his petition is untimely. As of that date, he knows his, and then he waits until March 25, 05, to file his federal habeas petition. So a person who wants to claim equity cannot say, I'm entitled to equity because I engaged in high-risk litigation. And then everything went against me. So if he had filed in, say, May or June of 04, he wouldn't be making this argument. I don't know. I'm not. He may still be making it. But part of the point is, too, is that Harris talks about the circumstances and the reliance. Harris made no claim in his opposition to Respondent's motion to dismiss in the first instance. It was an afterthought, and it's always been an afterthought, if it was ever even a thought at all of Mr. Sullivan's, not his counsel's. There isn't any allegation that his counsel even relied on it. Would that make a difference? No, I don't think so. No. Why not? I don't get that. I mean, if his counsel said he relied, I mean, that's speaking for the client. Well, if his counsel relied, it goes back to my argument again, starting with R2's counsel is making a high-risk decision knowing that the law could come down the other way. Well, maybe.  Well, I don't think that's a great deal of evidence, given our very clear rule in Dictato. So the only question is, what's the reach of it? What's the reach of Harris? Well, the reach of Harris is, is that there still has to be a causal relationship. The Petitioner still has to show that he was diligent. And Petitioner has not shown that he's diligent because either, and with respect to counsel's argument previously, the Federal District Court the first time around did not find that he was diligent then either, pointing out, I forget it was, I forget it was, he had 120 days to do something and he still didn't do it. And then the other time around, he waited 14 months to do something. So in neither circumstance was the Petitioner diligent. So he would have been an untimely decision. Even if you decide that there was reliance, and as I recall the first time through, the court said, well, he still would have been untimely anyway, because he didn't claim reliance and equitable tolling through the entire time period, only the one time period. In your judgment, would a per se rule, that is, any petition filed while Dictato was alive and well for peace, is going to get equitable tolling? Would that kind of a rule comport with the criteria that we normally use for equitable tolling? No. And I believe I cited several cases to this Court in my brief that says that there is basically no automatic. But it sure is clean and clear. Well. And kind of limited, because those cases have got to be few and far between at this point. Well, then what you do if you say that, now we're going to have a raft of people coming in saying, well, now we're relying on the Ninth Circuit's most recent determination in this case, saying that now there's a blanket rule and we're going to be litigating all of this stuff all over again. Quite frankly, I believe it's to say something is automatic is inconsistent with equitable tolling in the first instance. Okay. You're over time. Thank you. Thank you. Thank you. The fact of the matter is, even if the Harris decision and Townsend were per se rules or bright-line rules, and I think, again, I have to stress the fact that the rule must include first the determination of diligence, which has always been a requirement for an equitable tolling petitioner to establish. So if we have diligence and we have the facts of a post-dictato and pre-pace petitioner diligently litigating his case, then I think there could be a bright-line or per se rule. The fact is, though, it wouldn't open the courts up to a raft of petitioners coming in and making the claim because we haven't seen it yet. The fact is, this rule, if it is to be called a per se rule, is very specific. There aren't going to be that many petitioners who are going to fall within the particular parameters discussed in Townsend and Pace. But Sullivan happens to be one of those petitioners. He was diligent. There was a finding of diligence the first go-around. He had plenty of time on his federal limitations clock to file his federal petition timely. And, in fact, he did. And it wasn't until 30 days later that he was time-barred, not because he made a mistake, not because he was dilatory, but because Pace overturned this Court's rule in dictato. If he's entitled to equitable tolling during that period, May 10, 2001, to March 30, 2004, then his federal petition filed March 25, 2005, was, in fact, timely. He's entitled to have the district court review the merits of his claim. All right. Thank you. Thank you. The case argued is submitted.
judges: Pallmeyer, Rymer, Fisher